# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

MIDLAND NATIONAL LIFE
INSURANCE COMPANY,

    Plaintiff,

v.                                            No. 5:19-cv-00591-JKP

IRIS V. SANTANA-AYALA a/k/a IRIS
SANTANA a/k/a IRIS VELIA AYALA
a/k/a IRIS VELIA AYALA-AYALA,
HERIBERTO RODRIGUEZ, AND JUAN
CARLOS VEGA-DIAZ a/k/a JUAN
CARLOS VEGA,

    Defendants.

## ORDER

This matter is before the Court upon Plaintiff Midland National Life Insurance Company's Motion for Judgment on its Interpleader (ECF No. 21) and Defendant Iris V. Santana-Ayala's Motion for Default Judgment (ECF No. 22). The premises considered, the Court grants Midland's judgment on its Interpleader and enters default judgment against Juan Carlos Vega-Diaz a/k/a Juan Carlos Vega.

### I. Background

On May 31, 2019, Plaintiff Midland National Life Insurance Company ("Midland") filed a Complaint for Interpleader pursuant to 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure to resolve competing claims to the death benefit of a life insurance policy issued by Midland to Deborah M. Santana ("Deborah"). ECF No. 1. Iris V. Santana-Ayala a/k/a Iris Santana a/k/a Iris Velia Ayala a/k/a Iris Velia Ayala-Ayala ("Iris"), Deborah's mother, was the original beneficiary but shortly before Deborah's death Midland received an incomplete change

of beneficiary form naming Heriberto Rodriguez ("Heriberto") as the beneficiary in place of Iris.

Although Midland initially determined that the form was sufficient to effect the change, and Heriberto made a claim for the proceeds, Iris and other family members disputed Heriberto's entitlement to the money. Further, Midland was concerned that Deborah may have been married both at the time she applied for the Policy and at the time of her death even though Deborah stated in her application for the Policy that she was single, and is listed on her death certificate as divorced. Midland noted that because Texas is a community property state, Deborah's estranged spouse, Juan Carlos Vega-Diaz a/k/a Juan Carlos Vega ("Juan"), may have a potential claim to some portion of the proceeds.[1] Consequently, Midland filed its interpleader asking the Court to determine whom among the Defendants is entitled to the proceeds and in what amount, and deposited the proceeds with the Registry of the Court.

Midland contends it has done all that is required to perfect its interpleader and asks the Court to enter an order discharging Midland from any further liability under the Policy, award Midland its attorney fees and costs incurred in bringing its interpleader, and dismiss Midland from all further proceedings. *See* ECF No. 21.

Iris's motion states Defendants each waived service of summons, but only Iris answered the Complaint; Heriberto and Juan are each in default; and the Clerk has entered default. Thus, Iris contends, default judgment against Heriberto and Juan is proper. And, as the only competing claimant to appear in these proceedings in which the Complaint sufficiently alleges that she is a

---

[1] Under Texas state law, a surviving spouse may be entitled to a portion of the proceeds of a life insurance policy if the policy was paid for with community funds. *Estate of Cavenaugh v. C.I.R.*, 51 F.3d 597, 602 (5th Cir. 1995) ("If life insurance is purchased during a marriage and paid for with community funds, the 'policy rights' or incidents of ownership and the 'proceeds rights' or the rights to receive the proceeds in the future constitute community property.") (internal quotation omitted); *see also* Tex. Family Code Ann. § 9.301 (providing for revocation of a former spouse as a life insurance beneficiary).

putative beneficiary of the death benefit, Iris argues she is therefore entitled to the disputed death benefit. *See* ECF No. 22-1.

## II. Legal Standards

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has entered the party's default based upon a failure to plead or otherwise defend the action. A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *Saldana v. Zubha Foods, LLC*, 2013 WL 3305542 (W.D. Tex. 2013) (*citing New York Life Ins. Co. v. Brown*, 84 F.3d 137 (5th Cir. 1996)). Even if a defendant is technically in default, a plaintiff is not entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam); *accord Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Generally, the entry of default judgment is committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). Among the factors a district court may consider when deciding whether to grant a default judgment are: (1) whether the default was caused by a good-faith mistake or excusable neglect; (2) whether there has been substantial prejudice; (3) the harshness of a default; (4) whether there are material issues of fact; (5) whether grounds for a default judgment are clearly established; and (6) whether the court would think it was obligated to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Federal Rule of Civil Procedure 22 permits a plaintiff "with claims that may expose [it] to double or multiple liability" to join those persons as defendants in a suit to determine each defendant's rights. Fed. R. Civ. P. 22(a)(1). Rule 22 interpleader does not require deposit of funds into the court's registry. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir.

1976). Interpleader relief is also available under 28 U.S.C. § 1335. To establish a right to relief under § 1335, a party must show: (1) it has custody of money or property worth $500 or more; (2) two or more adverse claimants of diverse citizenship are "claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument;" and (3) the party has deposited such money or property in the registry of the Court. 28 U.S.C. § 1335. The statute permits all actual and potential claimants to be named in an interpleader action so as to ensure complete resolution of all competing claims.

"Interpleader actions are decided through a two-step process. The first step is for the Court to determine whether a proper case for interpleader is presented. To so find, the Court must determine that there is a single fund with adverse claimants to that fund. If the Court determines that the requirements for interpleader are met, the next stage of the litigation is to determine the rights of the claimants." *Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, No. 3:03-CV-1299-M, 393 F. Supp. 2d 411, 415 (N.D. Tex. Mar. 31, 2005). The effect of a default judgment against a defendant named in an interpleader is that the party "who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted." *Metro. Life Ins. Co. v. Theriot*, No. 08-01480, 2010 WL 4644057 (W.D. La. Nov. 8, 2010) (quoting *Shuqualak Lumber Co., Inc. v. Hardin*, No. 1:08CV297-P-S, 2009 WL 2767676, at *1-2 (N.D. Miss. Aug. 27, 2009).

A district court has the authority to award reasonable attorneys' fees in interpleader actions. *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999). "Fees may be awarded 'when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants.'" *New York Life Ins. & Annuity Corp. v. Cannatella*, 550 F. App'x 211, 217 (5th Cir.

2013) (quoting *Rhoades*, 196 F.3d at 603). A district court may take into account a number of factors when assessing whether attorneys' fees are appropriate: "1) whether the case is simple or involved; 2) whether the stakeholder performed any unique services for the claimants or the court; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the services rendered benefited the stakeholder; and 5) whether the claimants improperly protracted the proceedings." *Id.* (quoting 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1719, at 688-89 (3d ed. 2001) and citing *Royal Indem. Co. v. Bates*, 307 F. App'x 801, 806 (5th Cir. 2009)). Courts in this circuit may apply the lodestar method to determine whether requested attorney's fees are reasonable and equitable in interpleaders. *See Transamerica Annuity Serv. Corp. v. Symetra Life Ins. Co.*, No. 16-1426, 2017 WL 3442464 (S.D. Tex. Aug. 9, 2017); *Metro. Life Ins. Co. v. Linnear*, No. 14-0047, 2014 WL 4678713 (W.D. La. Sept. 18, 2014). Because all that is required in a typical interpleader action is the "preparation of a petition, the deposit in court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder," the amount of the attorney's fee award is usually moderate. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1719 (3d ed. 2001).

### III. Analysis

Upon review of the complaint, motions, exhibits, and the record, the Court finds the following. Midland issued a flexible premium adjustable universal life insurance policy, no. 1503074616, to "Deborah M. Santana" as the owner and insured, with a face value of $250,000 and a Policy date of October 2, 2013. ECF No. 1 ¶ 8. The Policy provides in pertinent parts:

> 2.1.1 PROCEEDS PAYABLE – If the Insured dies while this Policy is in effect, We will pay the Policy Proceeds to the Beneficiary upon receipt at Our Executive Office of due proof of the Insured's death acceptable to Us. […]

> 3.10 BENEFICIARY – On the Policy Date, Beneficiaries are as stated in the application. […]
>
> 3.10.1 CHANGE OF BENEFICIARY – You may change a revocable Beneficiary. […] We must receive Written Notice informing Us of the change. Upon receipt, a change takes effect as of the date the Written Notice was signed by the Owner. […] The Policy defines "Written Notice" as "a written form satisfactory to Us and received by Us at Our Executive Office."

*Id.* ¶ 9.

On or about August 15, 2016, Midland received a Beneficiary Change Request form for the Policy which listed the insured as "Deborah Marie Santana-Ayala" and the sole primary beneficiary as "Heriberto Rodriguez, Significant Other." *Id.* ¶ 13. On December 28, 2016, Midland was notified that Deborah passed away on December 26, 2016. *Id.* ¶ 15. On or about February 9, 2016, Midland received a Proof of Death Claimant's Statement signed "Iris V. Santana-Ayala" and dated February 6, 2016,[2] along with an original death certificate for Deborah. *Id.* ¶ 17. Deborah's death certificate states, in part, that Deborah was "Divorced" at the time of her death. *Id.* ¶ 18.

Midland determined that the August 15, 2016 request to change the beneficiary of the Policy substantially complied with the terms and conditions of the Policy. *Id.* ¶ 19. Midland informed Iris by letter dated May 19, 2017, that it had determined she was not the primary beneficiary of the Policy. *Id.* ¶ 20. On or about May 22, 2017, Midland mailed a Proof of Death Claimant's Statement form to the last known address for Heriberto. *Id.* ¶ 21. On or about July 10, 2017, Midland received a letter from the attorney representing Deborah's Estate and Iris. *Id.* ¶ 22. The letter stated that the attorney had been retained to file a wrongful death action on behalf of Deborah's children "due to the misconduct of Mr. Juan Vega against Ms. Santana" and

---

[2] The Court assumes February 6, 2016 and February 9, 2016 are typographical errors.

requesting that the proceeds of the Policy not be paid until their claim was adjudicated. *Id.* On or about January 29, 2018, Midland received a Proof of Death Claimant's Statement bearing Heriberto's signature dated November 18, 2017, along with a certified copy of Deborah's death certificate. *Id.* ¶ 23.

On February 8, 2018, Midland received a call from the attorney for Deborah's Estate and Iris. *Id.* ¶ 24. The attorney requested confirmation that the claim had not been paid and stated to Midland that litigation regarding the claim was pending. *Id.* On January 29, 2019, Midland received an email from Zolange Lugo-Santana ("Zolange") stating that she is a daughter of Deborah and making a number of allegations, including, but not limited to: (a) that Deborah lacked mental capacity to change the beneficiary of the Policy; (b) that Zolange suspected fraud in connection with the Policy; and (c) that Deborah was still legally married to Juan at the time of her death but that they had been separated since 2011. *Id.* ¶ 25. On February 1, 2019, Midland received an additional email from Zolange reiterating some of her previous allegations and stating that Deborah's death certificate was in the process of being amended to reflect the fact that she was still legally married at the time of her death. *Id.* ¶ 26. No amended death certificate was received by Midland. *Id.*

On May 31, 2019, Midland filed its Complaint for Interpleader pursuant to 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure to resolve competing claims to the death benefit under flexible premium adjustable universal life insurance policy, no. 1503074616 (the "Policy"), insuring the life of Deborah M. Santana, with a face value of $250,000 and Policy Date of October 2, 2013. *Id.* ¶ 8. Midland admits its contractual liability under the Policy in the amount of $250,000.00, plus applicable interest thereon totaling $308,710.01 (face value of $250,000 plus $58,710.01 applicable interest). ECF No. 1 ¶ 28. Midland deposited this sum into

the Registry of the Court on September 9, 2019. ECF No. 21-2 at 2. Midland is a disinterested stakeholder claiming no interest in the proceeds of the Policy, and is indifferent as to which of the Defendants is entitled to those amounts. ECF No. 1 ¶ 32.

**1. Midland's Motion for Judgment on its Interpleader (ECF No. 21)**

Because each element of 28 U.S.C. § 1335 is satisfied, Midland's interpleader is properly presented. The proceeds at issue constitute a single fund greater than $500.00 arising out of the death benefit under the Policy. ECF No. 1 ¶ 28. Midland has received competing claims for the proceeds from two of the Defendants, Iris and Heriberto, and, by operation of Texas law, the potential for a claim by Juan exists by virtue of his marriage to Deborah. *Id*. ¶¶ 16-17, 23-24, 27. The amount in controversy exceeds $75,000 and each of the Defendants is minimally diverse from one another and completely diverse from Midland. *Id*. ¶¶ 1, 6, 8. Finally, Midland deposited the funds into the Court's Registry. ECF No. 21-2 at 2. Accordingly, the Court grants Midland's Motion for Judgment on its Interpleader (ECF No. 21).

**2. Iris's Motion for Default Judgment (ECF No. 22)**

On June 19, 2019, counsel for Midland served on each of the Defendants via Certified Mail a copy of Midland's Complaint, a Notice of Lawsuit, and a Request for Waiver of the Service of Summons, and provided a return-addressed stamped envelope, requesting that Defendants waive service of summons in this case. ECF No. 21-1 (Declaration of Sara G. Janes ¶ 2). Each Defendant provided an executed Waiver of the Service of Summons, which was filed with the Court. ECF Nos. 5, 6, 7. Per the Waivers, Defendants were required to respond to the Complaint on or before August 19, 2019. On September 27, 2019, the Court entered an Order to Show Cause instructing Defendants to show cause on or before October 21, 2019 as to why the Court should not direct the Clerk to enter a default against them. ECF No. 13. Iris subsequently

8

sought and received an extension of time to respond, ECF Nos. 15, 16, and filed her Answer on November 4, 2019. ECF No. 17. Heriberto and Juan did not timely respond to the show cause order and default was entered by the Clerk against each of them on November 26, 2019. ECF No. 20. On December 30, 2019, Heriberto filed a motion for leave to file an answer and cross claim. ECF No. 23.

With respect to Juan, applying the *Lindsey* factors, the Court finds no reason that a default judgment should be avoided. First, to date, Juan has filed no response to the Complaint, responded to this Court's Order to Show Cause, or requested an extension of time to respond. *See* ECF Nos. 13, 20. Juan is not on military service as defined by 50 U.S.C. § 3911(d). ECF No. 21-1 ¶¶ 6-8. Accordingly, there is no excusable reason justifying his failure to participate in this action. *Lindsey*, 161 F.3d at 893. Second, Juan's "failure to respond threatens to bring the adversary process to halt." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the harshness of default judgment is mitigated by the fact that Juan has forfeited any claim of entitlement he may have had to the insurance proceeds. *See Theriot*, 2010 WL 4644057, at *3 (citing *Shuqualak*, 2009 WL 2767676, at *2 ("A named interpleader defendant who fails to answer the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted.")). Fourth, the consequence of Juan's failure to respond is that there is no material issue of fact before the Court with respect to any right Juan may have to the proceeds. *Lindsey*, 161 F.3d at 893. Fifth, the grounds for default have been clearly established by Juan's failure to respond, as noted above. *Id.* Sixth, the Court is not aware of any facts that would give reason to set aside the default if challenged by Juan. Therefore, the Court concludes that default judgment against Juan is proper. Accordingly, the Court grants in part Iris's Motion

for Default Judgment (ECF No. 22).

### 3. Attorney Fees and Costs

Midland seeks an award of $6,732.19 in attorneys' fees and costs. Iris did not respond or otherwise object to Midland's motion for attorneys' fees. This is a simple case involving only three claimants, and even though Juan and Heriberto failed to respond, neither the stakeholders nor the claimants have improperly protracted the proceedings. The identity of the claimants was not difficult to ascertain, as Heriberto and Iris notified Midland of their purported claims to the insurance proceeds and Deborah's family notified Midland that Deborah was married to Juan. Midland acted in good faith and the services of its attorneys benefited Midland. The firm representing Midland appears to be a team of seasoned attorneys that should be quite familiar with the rules of interpleader. Notwithstanding, Midland's attorneys have billed for matters such as reviewing a minute order where none was entered and drafting routine documents including a pro hac vice motion, motion to deposit, and corporate disclosure statement. Midland's attorneys also billed to "finalize the Complaint" two weeks after it was filed and billed for five "conferences" which have no corresponding activity such as client communication, drafting pleadings, or filing documents.

Defendant also seeks $200 for pro hac vice admission fees. Courts in the Western District of Texas and elsewhere within the Fifth Circuit have denied pro hac vice fees as costs "because they are an expense that an attorney pays for the privilege of practicing law in this Court and are not normally charged to a fee-paying client...[and because] the opposing side should not be responsible for paying such costs and fees simply because [a party] chose to be represented by counsel who are not admitted to practice in this district." *Davis v. Perry*, 991 F.Supp.2d 809 (W.D. Tex. 2014) (*citing Lofton v. McNeil Consumer & Specialty Pharms.*, No. 3:05-CV-1531-

L, 2011 WL 206165 (N.D. Tex. Jan. 4, 2011) (disallowing pro hac vice fees as costs); *Knauff v. Dorel Juvenile Group, Inc.*, No. SA-08-CV-336-XR, 2010 WL 2545424, at *1-2 (W.D. Tex. June 21, 2010) (finding pro hac vice fees not taxable as costs).

Accordingly, the Court disallows those fees, totaling $1230.50, and awards $5501.69 in fees and costs.

### IV. Conclusion

Upon the forgoing, the Court GRANTS Plaintiff Midland National Life Insurance Company's Motion For Judgment on its Interpleader (ECF No. 21) and GRANTS IN PART Defendant Iris V. Santana-Ayala's Motion for Default Judgment (ECF No. 22).

Accordingly, it is ORDERED:

1. Midland National Life Insurance Company's Motion For Judgment on its Interpleader (ECF No. 21) is GRANTED.

2. The Clerk of the Court is DIRECTED to issue a check in the amount of $5501.69 from the proceeds deposited with the Registry of the Court, payable to Midland National Life Insurance Company c/o Chittenden, Murday & Novotny, LLC, 303 West Madison Street, Suite 1400, Chicago IL 60606.

3. Midland is DISMISSED from this action.

4. The Court expressly finds under Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delaying either enforcement or appeal of the Court's interpleader judgment.

5. Iris V. Santana-Ayala's Motion for Default Judgment (ECF No. 22) is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

6. Default judgment is entered against Juan Carlos Vega-Diaz a/k/a Juan Carlos Vega.

7. Iris's motion for default judgment against Heriberto Rodriguez is DENIED WITHOUT PREJUDICE.

8. The Clerk is DIRECTED to realign the parties such that Iris V. Santana-Ayala is Plaintiff and Heriberto Rodriguez is Defendant.

It is so ORDERED.

SIGNED this 2nd day of January 2020.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE